UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

United States,

                                        **ORDER**

     -against-                          19-CR-436(KAM)


Phyllis Pincus,
               *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

On November 30, 2021, Defendant Phyllis Pincus ("Defendant") pleaded guilty to conspiracy to defraud the United States in violation of 42 U.S.C. § 1320(a)-(7)(a)(3) and 18 U.S.C. §§ 371 and 3551. During the plea hearing, Defendant allocuted that she allowed her former husband, Andrew Barrett - who she knew had been excluded from Medicare and Medicaid after his convictions for healthcare and tax fraud - to access the computers at two pharmacies that she owned so that Barrett could submit claims to Medicare and/or Medicaid programs for payment for prescriptions dispensed by the pharmacies. Defendant brought Barrett into her pharmacies to submit claims, knowing that he had prior felony convictions for healthcare and tax fraud and therefore was excluded from participation in or access to Medicare or Medicaid. (ECF No. 85, Plea Tr. at 39-40.)

1

Prior to sentencing, the parties disputed the amount that Defendant owed in restitution and requested a *Fatico* hearing. (ECF Nos. 86-95.) After further discussion, however, the parties requested to proceed via briefing on the restitution issue rather than at a hearing. (ECF No. 92.)

In its submission, the Government argued that, for purposes of restitution, it could not measure every claim handled by Barrett because the nature of the Defendants' scheme *required* Barrett to use someone else's credentials – in this case, a non-prohibited pharmacist – to file the claims, which concealed which claims were submitted by Barrett. The Government also asserted that the video surveillance showing Defendant and Barrett entering the pharmacies was not time-stamped, meaning that the Government could not identify precisely which claims were submitted by Barrett during the time that he entered the pharmacies. Instead, the Government asserted that it had measured a subset of the total claims illegally submitted by Barrett – for false claims that Barrett submitted for drugs that were never dispensed to beneficiaries but billed to the healthcare programs. Because Barrett was the only person at the pharmacies known to have submitted false claims, the Government measured the "difference between the dollar amount of claims submitted for reimbursement to Medicare and the dollar amount of drugs actually purchased by the pharmac[ies] for sale to customers with prescriptions." (ECF No. 94, Letter at 3.) The

Government's conservative methodology included reviewing the wholesaler invoices for drugs purchased by Defendant's two pharmacies, and comparing the invoices to the claims submitted for reimbursement to Medicare for the two pharmacies for drugs purportedly dispensed to patients, during the time period stated in the indictment, November 2018 to May 2019. (*Id.*; ECF No. 25 at ¶ 29.)   The Government concluded that there was a $213,812.11 shortfall between the purchases of drugs by the pharmacies and what was purportedly dispensed by each pharmacy. (ECF No. 94.)

Defense counsel contested the Government's restitution amount and methodology.   Defense counsel conceded that because Defendant engaged in a conspiracy to defraud the Government, the Court was required to review the reasonably foreseeable acts of her co-conspirator, here Barrett. (ECF No. 95-1, quoting *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021).)   Defense counsel also conceded that *all* claims submitted by Barrett were unlawfully submitted and could be considered for purposes of restitution, given his ban from healthcare programs. (ECF No. 94 at 2.)   Defense counsel, however, contended that the Government had no evidence to establish which specific claims were filed by Barrett versus which were filed by other people – and that *only* Barrett's claims could be counted for restitution.   Defense counsel argued that the Court therefore had no basis to determine the restitution amount. Defense counsel contended that the Government's methodology was so

flawed that the Court could not rely on the Government's figures as a reasonable approximation, and should not impose restitution.

At sentencing on May 11, 2023, this Court found that the Government had born its burden to prove the restitution amount by a "reasonable approximation," using a reasonable methodology necessitated by the nature of Defendants' offense. *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013). The very nature of Defendant and Barrett's conspiracy made an exact dollar amount difficult to calculate, as the co-conspirators intentionally submitted claims in a manner that would be difficult or impossible to trace to Barrett, in order to circumvent his prohibition from submitting claims. The Court further stated that the Government's calculations captured, in a reasonable approximation, a smaller subset of illegal claims that include only Barrett's false claims, i.e., claims for drugs that were billed but never distributed to Medicare and Medicaid beneficiaries. The Court determined that, given the difficulty in determining the accuracy of the pharmacies' records, the Government's attempt to capture only this subset of claims for restitution was both "reasonable and conservative." *United States v. Jafari*, 663 F. App'x 18, 24 (2d Cir. 2016) (summary order). Therefore, the Court found that the loss amount for restitution was $213,812.11.

The Court principally sentenced Defendant to 4 months' incarceration, 3 years' supervised release, and restitution in the

amount of $213,812.11 plus interest.  The Court ordered that restitution would be joint and several with Defendant's co-conspirator, pursuant to 18 U.S.C. § 3664(h).  The Court ordered that restitution was due and payable immediately, and that Defendant must pay restitution at a minimum monthly rate of at least $30 per quarter while in custody.  The Court ordered that, upon release, Defendant must continue to pay restitution at a minimum monthly rate of $400 or 10% of earnings after deductions required by law, whichever was greater, until restitution is paid in full.

Because the issue of restitution had not been decided prior to sentencing, the Court ordered that the Government file a proposed order of restitution within one day listing the names and addresses of the victims entitled to restitution and granted defense counsel an opportunity to file any objections.  The Government submitted a proposed order on May 12, 2023.  (ECF No. 104.)  On May 16, 2023, after receiving an extension, defense counsel filed a submission (1) generally reiterating Defendant's prior objections to the amount of restitution; (2) requesting that the Court waive interest on restitution payments; and (3) requesting that the Court stay the portion of the judgment concerning restitution payments pending appeal.  (ECF No. 106.) The Government opposes defense counsel's requests.  (ECF No. 108.)

As the Government notes, the Court has discretion under Federal Rule of Criminal Procedure 38(e) to stay the portion of a sentence providing for restitution pending appeal.  In determining whether to grant a stay of restitution, courts analyze the following four factors:

> whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 5983126, at *4 (S.D.N.Y. Dec. 17, 2021) (quoting *United States v. Razzouk*, No. 11-CR-430 (ARR), 2018 WL 3574868, at *1 (E.D.N.Y. July 25, 2018)).

Here, Defendant has not established a likelihood of success on the merits of an appeal.  As noted previously, this Court found at sentencing that the Government had satisfied its burden to prove Defendant's restitution amount by a "reasonable approximation," *Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013), and that the Government's methodology yielded a conservative estimate.  The Court identified at sentencing that the parties did not dispute that *all* claims submitted by Barrett were subject to restitution, but that the Government's calculations included only a smaller subset of illegal claims, which included only Barrett's false claims, i.e., claims for drugs that were billed but never

distributed to Medicare and Medicaid beneficiaries.   The Court
also noted specifically that Defendant was liable for both the
false claims and the valid claims, if any, submitted by Barrett,
and that the fraudulent claims were paid into bank accounts
controlled by Defendant.   Under the MVRA, a defendant must pay
restitution for losses "flowing from the reasonably foreseeable
actions of [his or her] co-conspirators."   *United States v.
Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021).   The Court found that
it was reasonably foreseeable for Defendant that by bringing
Barrett to her pharmacies to submit claims unlawfully, he would
use his improper access to the pharmacies' computers to submit
false claims to Medicare and Medicaid, given that (1) he had
recently been convicted for submitting false claims from the same
pharmacies; (2) Defendant brought Barrett in to her pharmacies
before and after normal working hours to avoid detection; (3)
Defendant was concerned about the state of finances at the
pharmacies and had asked Barrett for help; and (4) Defendant did
not know how to submit claims and thus did not review Barrett's
activities on the computers.   Further, Defendant's conduct was a
"necessary factor" in causing the loss to the victims; but for
Defendant's conduct, Mr. Barrett could not have submitted false
claims in this way.   *Goodrich*, 12 F.4th at 229.

Defendant also has not established irreparable injury without
a stay.   The Court is sympathetic to the financial difficulties

that Defendant may face during her term of incarceration and afterwards. The Court's restitution order, however, provides for payment of only $30 per quarter while Defendant is incarcerated, and payment in monthly installments based on the greater of a modest dollar amount or a small percentage of her monthly income upon her release. *Cf. Tagliaferro*, 2021 WL 5983126, at *4. Further, as the Court advised at sentencing, the financial statements available to the Court indicate assets, such as Defendant's timeshare properties, that may be used liquidated and used to contribute to restitution obligations. *Cf. Razzouk*, 2018 WL 3574868 at *2.

Finally, although the issuance of a stay would not likely injure any other party interested in Defendant's proceeding, the public interest lies in favor of government agencies receiving restitution for their losses as quickly as possible. Defendant's conduct deprived Medicare and Medicaid of funds used to assist elderly, disabled, and poor individuals. As the Government argues, the "time-value" of money means that restitution paid sooner is more valuable for the victim agencies and for those that the agencies provide for. Indeed, the depreciation of money over time is why restitution awards typically require interest payments. Therefore, it is not in the public's interest to stay Defendant's payments pending appeal or to waive interest. Accordingly, the

Court declines to stay payment of restitution or waive interest, in its discretion.

For the foregoing reasons, the Court DENIES Defendant's request to waive interest on her restitution award and DENIES Defendant's request to stay restitution payments pending appeal.


**SO ORDERED**

Dated:      May 19, 2021
            Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York